## H. P. Mansfield et al. v. W. F. Neese.

### Decided November 23, 1899.

**1. Innocent Purchaser—Payment by Note.**

One is not, as against prior rights and equities, a bona fide purchaser of land for value where he gives in payment therefor his notes which are not negotiable because containing a stipulation that the maker is not to be personally liable thereon.

**2. Same—Putting on Inquiry—Inadequacy of Consideration.**

Where the price paid for land is so inadequate to the value thereof that it would put a reasonably prudent man on inquiry as to a defect in the title, or that the proposed conveyance was for some improper purpose, a payment of part of the consideration in cash will not constitute the buyer a purchaser for value.

**3. Same—Pre-Existing Debt Not Valuable Consideration.**

As against prior rights and equities the discharge of a pre-existing debt is not sufficient to constitute one a purchaser for value.

**4. Assignment of Error.**

An assignment of error to the refusal of the trial court to give a requested charge which does not set out such charge and is not followed by a statement setting it out, will not be considered.

**5. Same.**

An assignment of error to the exclusion of offered testimony will not be considered where it is followed by neither proposition nor statement.

**6. Vendee's Lien on Land.**

Where defendants in settlement of a debt they owed plaintiff conveyed land to him by a deed which was delivered in escrow only, and they afterwards conveyed the land to others who were not bona fide purchasers, the court properly subjected the land to a vendee's lien in favor of plaintiff.

Appeal from Harris. Tried below before Hon. William H. Wilson.

*Goldthwaite & Moody, J. M. Gibson,* and *Tracy B. Dunn,* for appellants.

*E. P. Hamblen,* for appellee.

GARRETT, CHIEF JUSTICE.—This action was brought by W. F. Neese against H. P. Mansfield, W. R. McElroy, and J. L. Hudson to set aside certain deeds of conveyance made by the said Mansfield to the said McElroy and Hudson, or in the event that the later were innocent purchasers of the land conveyed to them, for judgment against the said Mansfield for the value of the land.

Plaintiff alleged that on May 6, 1898, he and the defendant Mansfield and W. B. Root were partners in business, and that on said day the partnership was dissolved by mutual consent, and he conveyed his interest in the firm to his copartners, Mansfield and Root, and was to receive therefor a sufficient number of acres of land out of a tract belonging to the firm and described in the petition as at $16 per acre would make the sum of $2298; that it was agreed that John T. Baker and H. F. McCoy should check up the accounts of said partnership, and should charge the plaintiff with his portion of any amount that had not been set forth and accounted for in the statement which had formed the basis of their agreement for dissolution; that said Baker and McCoy did check up all statements and accounts and found them correct. That on May 7, 1898, the said parties agreed that plaintiff should take 72.4 acres of tract above mentioned, the title to which stood in Root, and for balance certain lots, the title to which was in the wife of Mansfield, and deeds were executed by the said Root and the said Mansfield and wife respectively conveying the land to the plaintiff, and were placed in the hands of McCoy in escrow to be delivered when the said McCoy and Baker should find the accounts correct. The plaintiff further averred that the said Mansfield afterwards fraudulently procured a deed to himself for the 72.4 acres from Root and conveyed the same to said McElroy, and joined by his wife also conveyed the lots to the said Hudson with intent to defraud the plaintiff and place the land beyond his reach; that the conveyance to the said McElroy expressed as a consideration therefor $650 in cash and two notes, one for $800 due in one year, and the other for $1000, due in two years; that the conveyance to said Hudson recited a consideration of $50 in cash and two notes for $225 each, payable in one and two years. Plaintiff averred that the said McElroy and Hudson knew the fraudulent purpose of said Mansfield and aided him in the perpetration of said fraud. He prayed for the cancellation of the deeds and notes, and in the alternative, if the notes had been transferred to an innocent purchaser, for personal judgment for the value of the land and for general and equitable relief.

The defendant Mansfield answered that the agreement of May 6th was mutually set aside and a new one was made May 7th, and by the terms thereof the deeds were executed in escrow to be delivered on the condition that within one month the plaintiff should show, with the assistance of an expert accountant, that he had duly entered of record, as bookkeeper of the firm, upon the books thereof all its transactions, and had not converted to his own use any of the assets of the firm, and that said time had expired long prior to any disposition of said land. and

plaintiff had never made the showing required. There were also averments to show the amount of money put in the partnership by the plaintiff, and general allegations of false and fraudulent entries made by the plaintiff upon the books of the concern, and the conversion by him of money belonging thereto amounting to more than the value of his interest. Defendants McElroy and Hudson pleaded that they were innocent purchasers of the land.

The case was submitted to the jury upon special issues which, with the answers thereto, are as follows:

"1. Do you believe from the evidence that the agreement of settlement made May 6, 1898, between Mansfield, Neese, and Root was by mutual agreement of all the parties thereto annulled and canceled on May 7, 1898, and that all parties in lieu thereof made the agreement alleged in defendant Mansfield's first amended original answer filed November 21, 1897?" Answer: "No."

The second special issue was submitted on the hypothesis that the jury should answer the first question in the affirmative only, and was not answered, and need not be set out.

"3. Do you believe from the evidence that the deeds (delivered) to Dr. McCoy were delivered to him in carrying out the written agreement of May 6, 1898, or that the same were delivered in carrying out another and different agreement (if any) alleged by defendant Mansfield in his first amended original answer filed November 21, 1898?" Answer: "Yes; to carry out the written agreement of May 6, 1898."

"4. Do you believe from the evidence that the deeds delivered to Dr. McCoy were delivered to him to be held a short while in order to see if any accounts or claims or charges should come in which had not been shown upon the books, and were to be delivered by said Dr. McCoy to plaintiff in the event that no such claims against the partnership should be presented? And do you believe that no such claims were presented, and that a reasonable time has expired?" Answer: "Yes."

"5. Do you believe from the evidence that the plaintiff Neese, during the partnership between himself, Mansfield, and Root, fraudulently withdrew from the funds of said partnership moneys of said partnership and used the same without accounting to said partnership for said funds (if any) so withdrawn?" Answer: "No."

The sixth special issue was not answered, as it was made unnecessary to do so by the negative answer to number 5.

"7. Gentlemen of the jury: The defendant Hudson claims that he is an innocent purchaser without notice of any claim of plaintiff of one of the tracts of land claimed by plaintiff. On this issue I charge you that the notes given by the said Hudson containing a provision that he, said Hudson, should not be held personally liable thereon, are not such negotiable paper as would entitle him in law to assert by virtue thereof that he was an innocent purchaser for value of said land. With respect to the amount of cash (if any you find) paid by said Hudson in the purchase of said land, you are instructed that where the price paid for land

is so inadequate to the value thereof that it would put a reasonably prudent man on inquiry that there must be some defect in the title or that the conveyance was made for improper purposes, in such an event the consideration paid would not constitute a purchaser for value. Bearing in view the above instructions on purchaser for value you will from all the evidence answer the following question: 'Do you believe from the evidence that defendant J. L. Hudson was a purchaser for value in good faith and without knowledge or notice of plaintiff's claim to the land bought by said Hudson?' " Answer: "No."

"8. You will state in answer to this question what is the value at the present time of the tract of land deeded to said Hudson?" Answer: "$500."

"9. Do you believe from the evidence that the said Hudson in taking said conveyance was confederating and conspiring with said Mansfield for the purpose of aiding said Mansfield in a purpose (if any) of covering up said property, as alleged by paintiff in his petition?" Answer: "We answer, yes."

"10. Do you believe from the evidence that the defendant McElroy was an innocent purchaser for value in good faith without notice of plaintiff's claim to the tract of land deeded to said McElroy? In connection with this question number 10, you are charged that the pre-existing debt of $100 testified to by McElroy is not sufficient in law to constitute him a purchaser for value." Answer: "We answer, no."

"11. You will state in answer to this question the present value of the land deeded to McElroy?" Answer: "We answer, $1800."

"12. Do you believe from the evidence that said McElroy in taking said conveyance was confederating and conspiring with said Mansfield for a purpose (if any) of covering up said property, as alleged by plaintiff in his petition?" Answer: "Yes."

"13. Do you believe from the evidence that notes were given to Mansfield in the sale to Hudson, and that the same have been transferred to an innocent purchaser for value without notice?" Answer: "No."

"14. Do you believe from the evidence that notes were given in the sale to McElroy, and that said notes have been transferred to an innocent purchaser for value without notice?" Answer: "No."

The court submitted special issues at the request of defendant Mansfield, which with the answers thereto are as follows:

"1. Do you believe from the evidence that the examination of the books by Baker & McCoy, provided for in the dissolution agreement in writing of date May 6, 1898, was ever completed?" Answer: "We answer, yes, to all parties concerned."

"2. Do you believe from the evidence that before the completion of the examination of the books by McCoy and Baker, Mansfield, Root, and Neese mutually agreed not to have the examination completed, but to compromise the matter among themselves, and that under such an agreement they entered into a verbal agreement of dissolution which was other and different from the written agreement, and intended by all

parties to take the place of such written agreement?"    Answer: "We answer, no."

The third question is immaterial, being predicated on an affirmative answer to number 2.

"4.   Do you believe from the evidence that the deeds which were in the hands of McCoy were ever delivered to plaintiff?"    Answer: "We answer, no."

"5.   What amount of money and other property do you believe from the evidence the plaintiff contributed to the assets of the partnership between himself, Root, and defendant Mansfield, and what was plaintiff's share in the profits earned by such partnership during its continuance?" Answer: "To question number 5 we answer $3333.34.  We find nothing on the books showing any profits accrued to the partnership firm of Mansfield, Root & Neese."

"6.   What amount of money and other property (if any) do you believe from the evidence plaintiff withdrew from said partnership with the knowledge and consent of his copartners?"   Answer: "To question number 6 we answer, $150 in cash and one note for $110 due from E. T. Tissinger."

The court received the verdict of the jury and in open court announced and entered an order in the minutes requiring the defendants, who were present in court, to return into court within ten days the notes given by the defendants McElroy and Hudson respectively to the defendant Mansfield for the land conveyed to them, for cancellation, or for such other orders as the court might deem proper in reference thereto.   And the ten days having expired and the defendants having failed to deliver said notes into the custody of the court, thereupon the court rendered judgment against the defendant Mansfield for the sum of $2297, the aggregate value of the land, and adjudged and foreclosed the same as a *vendee's* lien on the land, and directed the sale thereof in satisfaction of the amount adjudged.

From a careful examination of the record we conclude that the evidence is sufficient to support the findings of the jury upon the special issues submitted to them as to the good faith of the defendants McElroy and Hudson in the purchase of the land, as well as the other issues submitted to them.   The recital in the deed from Mansfield to McElroy of $650 was not true, but the evidence showed that McElroy executed negotiable promissory notes for the deferred payments as recited.   He testified that the only other consideration was $100 that Mansfield owed him.

By the first, second and third assignments of error the appellant Mansfield complains of the action of the court in refusing to require the appellee on cross-examination to answer questions:  (1) "As to what he had done with the money he brought down here with him," expecting to show that he had brought only the sum of $2200, when he had testified in direct examination that he had brought $3400;  (2) if it were not a

fact that he had received on a sale of property to Root $1250, and had entered on the books only $1063, diverting to his own use the difference; (3) asking where, on the books of Kuehner, Mansfield & Neese, appeared credit for a certain check exhibited to the witness.

There was no error in excluding the evidence thus sought to be elicited. The questions all related to transactions prior to the organization of the firm of Mansfield, Root & Neese, and were not material to the inquiry before the court. Mansfield's pleading was not sufficient to admit the evidence under it. The allegations of fraud are too general and vague. They point out no specific instance of fraudulent entries or diversion of money; and such as they are they relate only to the partnership of Mansfield, Root & Neese. The record shows also that the appellee testified at length and fully on cross-examination as to the matters referred to in the said assignment of error.

There was no error in refusing to submit the special issue requested by the appellant Mansfield and set out in his fifth assignment of error. It is fully embraced in the fifth and sixth special issues submitted by the court. Appellants complain of the action of the court in making the order requiring them within ten days to bring into court the notes given by McElroy and Hudson respectively to the appellant Mansfield, because said order was not warranted by law and not supported by the pleadings, evidence, or verdict of the jury. Mansfield had testified, and it appeared as an uncontradicted fact in the case that he had transferred the notes to H. Masterson, who was not a party to the suit. It is true that the jury answered that the notes had not been transferred to an innocent purchaser, believing no doubt that Masterson was not an innocent purchaser. Not being a party to the suit this finding could not bind Masterson. The pleadings fully set forth all the facts and invoked the general equitable powers of the court, and the court could properly make the order complained of. It could not prejudice the appellants. It gave them an opportunity to produce the notes, which they failed to do, and they can not complain because the court gave the appellee all the protection that was in its power. There was no error to the prejudice of the appellants in the recital in the judgment that the notes were held by persons unknown to the jury, for that is the effect of the undisputed fact that they had been transferred by Mansfield to a person not a party to the suit. The remaining assignments of error contained in the appellant Mansfield's brief are too general to require our consideration.

Appellant McElroy's second assignment of error will not be considered, because it assigns as error the refusal of the court to give special charge number 1 requested by him, but does not set it out. If the assignment were followed by a statement setting out the requested instruction it would be sufficient, but this is not done. Appellant Hudson assigns as error the refusal of an instruction requested by him on the question of bona fide purchaser. The instruction was correctly refused, for from the undisputed evidence he was not an innocent purchaser for value. This issue was correctly submitted to the jury by the court.

The assignment of error complaining of the action of the court in receiving certain testimony of the witness George Standard is followed by neither proposition nor statement, and will not be considered. From the nature of the case, the appellant Mansfield having put it out of his power to convey the land to the appellee, and the appellants McElroy and Hudson not being innocent purchasers in good faith, and their notes having been transferred to a party not before the court, we think a lien was properly adjudged against the land in appellee's favor for the value thereof. There was sufficient testimony to warrant the submission of the tenth special issue as to the good faith of McElroy, and the evidence was sufficient to support the finding, and the appellant McElroy's eighth assignment of error is not well taken; nor did the court err in the instruction given in connection with this issue. The finding of the jury. in response to the ninth and twelfth issues finds support in the evidence, and render harmless error, if any, the errors complained of in respect to the refusal of the special instructions as to purchaser in good faith. None of the remaining assignments of error require special notice, as they are disposed of by what has been already said. The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.